UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
                                )
ALFRED L. CINELLI,              )
                                )
            Plaintiff,          )
                                )
      v.                        )
                                )
                                )
MARTIN J. O'MALLEY,             )   Civil Action No. 24-cv-10613-DJC
COMMISSIONER OF                 )
SOCIAL SECURITY ADMINISTRATION, )
                                )
            Defendant.          )
                                )
                                )
_____)
```

MEMORANDUM AND ORDER

CASPER, J.                                          February 27, 2025

I.     Introduction

Plaintiff Alfred L. Cinelli ("Cinelli") has filed claims for disability insurance benefits ("SSDI") and supplemental security income ("SSI") with the Social Security Administration ("SSA"). Pursuant to the procedures set forth in the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3), Cinelli brings this action for judicial review of the final decision of Defendant Martin J. O'Malley, Commissioner of the Social Security Administration (the "Commissioner"), issued by an Administrative Law Judge ("ALJ") on June 23, 2023, denying his claim. D. 1. Before the Court are Cinelli's motion for summary judgment, D. 8, and the Commissioner's motion to affirm that decision, D. 11. In his motion, Cinelli claims that the ALJ failed to evaluate the opinion

evidence in the record properly.  D. 9 at 12–16.  For the reasons discussed below, the Court DENIES Cinelli's motion, D. 8, and ALLOWS the Commissioner's Motion, D. 11.

## II.    Factual Background

Cinelli was 50 years old when he ceased working on February 18, 2020.[1]  R. 17, 28.[2]  He had previously worked as a laborer, in the Department of Public Works, in security and in a warehouse.  R. 102, 244, 263.  In his December 8, 2020 application for SSDI and SSI with the SSA, Cinelli alleged disability due to injuries to his shoulder, rotator cuff, bicep and labrum.  R. 94.

## III.    Procedural Background

Cinelli filed claims for SSDI and SSI with the SSA on December 8, 2020, asserting that he was unable to work as of February 18, 2020.  See R. 17, 40, 214, 219.  After initial review, his claims were denied on January 25, 2021.  R. 17, 92–104.  His claims were reviewed and again denied on March 2, 2022.  R. 17, 92, 105–11.  On May 18, 2022, Cinelli filed a timely request for a hearing before an ALJ.  R. 17, 134.  A hearing was held before an ALJ on September 28, 2022.  R. 17, 35.  In a written decision dated June 23, 2023, the ALJ determined that Cinelli did not have a disability within the definition of the Social Security Act and denied his claims.  See R. 17–29.  The SSA's Appeals Council denied his request for review on January 22, 2024.  R. 1–5.  Accordingly, the ALJ's decision is the Commissioner's final decision.  Id. at 1.

---

[1] Some documents related to the application for SSI and SSDI benefits list the onset date as February 18, 2019.  See, e.g., R. 93, 106, 111, 133, 306.  Other documents state that Cinelli was unable to work as of February 18, 2020 or list the injury as occurring on December 19, 2019, implying that the onset date was February 18, 2020.  See, e.g., R. 214, 356, 376, 422.  Noting these inconsistencies, the ALJ asked to clarify the correct onset date at the September 28, 2022 hearing, and Cinelli affirmed the correct date is February 18, 2020.  R. 39–40.  Nevertheless, the ALJ opinion referenced both dates.  R. 17, 19.  The Court assumes February 18, 2020 is the correct onset date because Cinelli affirmed that date at the ALJ hearing and that date aligns with the medical records.

[2] The administrative record appears at D. 7 and the Court refers to it as  "R. [page number]."

**IV.     Discussion**

    **A.     <u>Legal Standards</u>**

       *1.     Entitlement to Disability Benefits and Supplemental Security Income*

A claimant's entitlement to SSDI and SSI turns in part on whether he has a "disability," defined in the Social Security context as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. §§ 416(i), 423(d)(1)(a); 20 C.F.R. § 404.1505. The inability must be severe, rendering the claimant unable to do his or her previous work or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505–404.1511.

The Commissioner must follow a five-step process when he determines whether an individual has a disability for Social Security purposes and, thus, whether that individual's application for benefits will be granted. 20 C.F.R. § 416.920. All five steps are not applied to every applicant; the determination may be concluded at any step along the process. <u>Id.</u> First, if the applicant is engaged in substantial gainful work activity, then the application is denied. <u>Id.</u> Second, if the applicant does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, then the application is denied. <u>Id.</u> Third, if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted. <u>Id.</u> Fourth, if the applicant's "residual functional capacity" ("RFC") is such that he or she can still perform past relevant work, then the application is denied. <u>Id.</u> Fifth and finally, if the applicant, given his or her RFC, education, work experience and age, is unable to do any other work, the application is granted. <u>Id.</u>

2.      *Standard of Review*

This Court has the power to affirm, modify, or reverse a decision of the Commissioner upon review of the pleadings and record.  42 U.S.C. § 405(g).  Such review, however, is "limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence."  Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citing Manso-Pizarro v. Sec'y of Health and Human Servs., 76 F.3d 15, 16 (1st Cir. 1996)).  The ALJ's findings of fact are conclusive when supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion."  Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

B.      **Before the ALJ**

1.      *Medical History*

Cinelli presented the ALJ with records concerning his medical history, including diagnoses and treatment, particularly in regard to the conditions upon which he relied in claiming a disability in his application for SSDI and SSI benefits.

a)      Shoulder, Rotator Cuff, Bicep and Labrum

Cinelli has a history of left shoulder pain beginning in 2012 which required surgery on the joint.  R. 830.  Cinelli fully recovered from that surgery and had no pain until 2019, when he sustained the injury at issue.  Id.

In early December 2019, Cinelli fell approximately three feet while transferring materials onto a cherry picker during work and dislocated his shoulder.  R. 837, 882.  A left shoulder x-ray taken on January 22, 2020 showed moderate acromioclavicular joint osteoarthritis, mild glenohumeral joint degenerative change and degenerative changes of the greater tuberosity.

R. 393.  A left shoulder MRI taken on February 6, 2020 showed a subacute full-thickness tear of the left rotator cuff as well as a subacute to chronic fracture of the left humeral head and degenerative arthropathy of the acromioclavicular joint.  R. 359–60.

Cinelli claims that he has not been able to work since February 18, 2020.  R. 17, 39–40. Dr. McKeon performed an arthroscopy and a rotator cuff repair surgery on Cinelli on March 17, 2020.  R. 313.  Prior to surgery, Dr. McKeon noted weakness in Cinelli's left shoulder, a reduced ability to lift the arm, an obvious arm drop and pain radiating down from the lateral deltoid region. R. 523.  In November 2020, Dr. McKeon noted that Cinelli was "making wonderful progress" in physical therapy.  R. 365.

A left shoulder MRI in January 2021 showed rotator cuff repair and some subtle increased signal in the tendons which could show tendinosis or postoperative change.  R. 457.  In February 2021, Cinelli reported he was able to lift about thirty pounds with his upper extremity.  R. 419–21, 494–96.  An examination in April 2021 noted that Cinelli had full range of motion of his shoulder. R. 416–18.  A cervical spine MRI in May 2021 showed a disc osteophyte complex at C5-C6 effacing the ventral thecal sac, narrowing the lateral recesses and contributing to the moderate bilateral neural foraminal narrowing.  R. 447–48.  A provider at a follow up in June 2021 noted that Cinelli's shoulder issues had almost resolved.  R. 596.  In June 2022, Cinelli had a C5-C6 artificial disc replacement.  R. 616, 843.  X-rays in July and September 2022 showed postsurgical changes with minimal disc height narrowing at C6-C7.  R. 612, 614.  In August 2022, Cinelli's range of motion in his left shoulder was only ten degrees restricted.  R. 890.

Between April 10, 2020 and September 27, 2022, Cinelli completed physical and occupational therapy.  See R. 695–828, 855–76, 882–935.  Throughout his therapy, his physical and occupational therapists noted that, considering the severity of his injury, Cinelli was making

progress and recovering well.  See R. 708, 713, 723, 728, 732, 738, 740, 744, 749, 754, 760, 780, 784, 806, 871, 921.

Cinelli often reported his pain as a zero to three out of ten on the pain scale.  R. 695, 698, 701, 707, 748, 759, 762, 765, 769, 779, 790, 798, 810, 816, 819, 822, 825, 855, 858, 861.  He denied numbness and tingling in his left hand and denied right shoulder weakness.  R. 416, 490–91.  A medical provider noted that Cinelli's left shoulder weakness was slight.  R. 503.  Cinelli was able to take out the trash, do laundry, carry groceries and exercise at a high level.  R. 695–96, 744, 749, 759.  Dr. Kwon concluded on multiple occasions between October 2021 and September 2022 that Cinelli had five out of five strength and normal reflexes in his upper and lower extremities.  R. 661, 840, 846, 849, 852.  Providers noted a full range of motion in Cinelli's elbow, wrist and hand.  R. 429, 496, 523.  Cinelli also demonstrated a normal gait and station.  R. 536, 585, 661, 834, 840, 846, 849, 852.  In May 2021, a provider noted that Cinelli's weightlifting put him at a heavy exercise level and noted that an MRI showed "excellent healing" following his rotator cuff repair.  R. 489–90.

### 2. Medical Opinions

The ALJ reviewed opinions from a number of medical professionals regarding Cinelli's disability status.

#### a)    State Agency Opinions

Dr. Lucinda Wheelock evaluated Cinelli in January 2021 and determined that he could occasionally lift or carry twenty pounds, occasionally push, pull or reach in any direction with a limitation in the left, upper extremity.  R. 98–100.  Dr. Wheelock also concluded that Cinelli had full range of motion in his elbow, wrist and hand, R. 100–01, and noted that because Cinelli is right-handed, and can perform chores one handed, he can work at a light exertional level.  Id.

Dr. Malavalli Gopal evaluated Cinelli in February 2022 and determined that he could work at the light exertional level.  R. 105–11.  He concluded that Cinelli could occasionally lift or carry twenty pounds; occasionally push and pull with his left hand; never climb ladders, ropes or scaffolds; occasionally crawl; occasionally grasp, twist and reach in all directions and should avoid exposure to extreme cold and heat, vibration, humidity, fumes and other irritants and hazards. R. 108–09.  His ability to push and/or pull in the upper extremities was limited beyond lift and/or carry.  Id. at 108.  Dr. George Cross reviewed Dr. Gopal's opinion in March 2022 and agreed with Dr. Gopal's proposed limitations.  R. 609–10.

b)    Dr. Brian McKeon

In July 2020, Dr. Brian McKeon treated Cinelli and noted that he "look[ed] excellent," was "doing phenomenal" and Dr. McKeon and his team "only anticipate[d] further improvement." R. 510.  Dr. McKeon then cleared Cinelli for sedentary work.[3]  Id.  In January 2021, Dr. McKeon noted that Cinelli believed his progress had plateaued and cleared Cinelli for light duty.[4]  R. 500.

In September 2022, Dr. McKeon, who at this time had not examined Cinelli in the previous sixteen months, appeared to reverse his opinion and placed strict limitations upon Cinelli's ability level, finding that he could not lift or carry anything even up to ten pounds.  R. 670.  Dr. McKeon concluded that Cinelli could sit or stand for three to four hours continuously or total in a workday, R. 671, could walk for one hour continuously or total in a workday, id., and could reach, handle, finger or feel up to one third of the time with either arm and never push or pull with either arm, R. 672.  Dr. McKeon also opined that Cinelli should never climb ladders or scaffolds, stoop, kneel,

---

[3] Pursuant to 20 C.F.R. § 404.1567(a), "[s]edentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."

[4] Pursuant to 20 C.F.R. § 404.1567(b), "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."

crouch or crawl, R. 673, and concluded that Cinelli could never tolerate exposure to unprotected heights, moving mechanical parts or humidity and wetness and could occasionally operate a motor vehicle and tolerate exposure to dust, odors, fumes, pulmonary irritants, extreme cold, extreme heat and vibrations, R. 674.  He also cautioned that Cinelli should not repeatedly use his left upper extremity.  R. 675.  Dr. McKeon opined that based upon his impairments, Cinelli could not perform activities like shopping; travelling without a companion for assistance; preparing a simple meal and feeding himself or sorting, handling or using paper or files.  R. 675.

c)    Dr. Brian Kwon

In his September 2022 assessment, which took place three months after Cinelli underwent neck surgery, Dr. Kwon placed strict limitations upon Cinelli's abilities, concluding he was "totally disabled" by his "recent cervical surgery."  R. 680.  Dr. Kwon concluded that Cinelli could not lift or carry anything up to or over ten pounds.  Id.  He stated that Cinelli could sit, stand or walk for only one hour each at a time or total in a day.  R. 681.  Dr. Kwon also concluded that Cinelli could never reach, handle, finger, feel, push or pull with his right hand, but he did not specifically note any limitations for Cinelli's left hand.  R. 682.  Dr. Kwon concluded that Cinelli could occasionally operate foot pedals up to one third of the time with his right or left foot, id., and could never climb stairs, ramps, ladders, or scaffolds; balance; stoop; kneel; crouch or crawl. R. 683.[5]

---

[5] The ALJ also reviewed the opinions of Dr. David Morley, Jr. and Dr. Rami Rustum. R. 26–27.  Dr. Morley evaluated Cinelli on October 26, 2021 and noted a tenderness to deep palpation; a mild limitation of cervical range of motion; a well-healed and nontender anterior axillary incision; well-healed and nontender anterior, lateral and posterior arthroscopic portals and a reduced range of motion of the shoulder.  R. 691–94.  Dr. Morley concluded that Cinelli was "totally disabled."  R. 694.

Dr. Rustum noted in February 2022 that Cinelli should avoid repetitive neck motions and should avoid lifting more than five to seven pounds with his left arm.  R. 832.  Dr. Rustum

3.    *ALJ Hearing*

At the September 28, 2022 administrative hearing, the ALJ heard testimony from two witnesses, Cinelli and a vocational expert ("VE"), Dawn Blythe. R. 35–36. Cinelli testified that he injured his left shoulder at work when he fell after transferring materials to a cherry picker. R. 61. Cinelli continued to work for a period of time and then underwent surgery on that shoulder. Id. Cinelli testified that since the surgery, his shoulder had been "awful," and his strength was not returning as he expected. R. 62. Cinelli claimed to be in constant pain with weakness, numbness and limited mobility. Id. He testified that he completed daily stretches recommended by his physical therapist just to maintain functionality. R. 63–64. His doctors advised him to go for walks, which he noticed caused his fingertips to become discolored and his left arm to become numb. R. 64.

In June 2022, Dr. Kwon performed a surgery replacing two vertebrae in Cinelli's neck. R. 66. Cinelli testified that after the surgery he continued to experience pain and numbness in his neck which made it difficult to turn. R. 67. He reported that his pain was between a six and a seven on the pain scale every day and the only medication he took for the pain was Ibuprofen approximately every other day. R. 67–68. He testified that he could sit or stand for fifteen to twenty minutes before it became too uncomfortable and he needed to adjust his position. R. 70.

Cinelli testified that he had full strength in his right arm, R. 71, with which he could lift his vacuum, a ten to fifteen-pound bag of dog food, two gallons of milk or a twenty-pound bag of charcoal, R. 72–73. While he could lift a case of twenty twelve-ounce water bottles with his right

---

concluded that Cinelli was "totally disabled" and would be for the "foreseeable future." Id. Dr. Rustum concluded the same in an April 2022 evaluation. R. 838.

The ALJ concluded both of these opinions were unpersuasive as both were inconsistent with the record. R. 26–27.

hand, he did find it difficult to lift a case of forty bottles with only one arm and he did not try to use both arms.  R. 72–74.  Cinelli testified that could not and did not try to lift anything with his left arm.  R. 78.

Cinelli reported that he was unable to bend, squat, stoop or kneel for a long period of time due to his neck pain and that he needed to use a wall to stand up from a kneeling position.  Id. Cinelli testified that he could not raise his left arm straight up above his head, R. 79, but could get dressed, brush his teeth, tie his shoes, do laundry, clean and vacuum without assistance, R. 80. Cinelli testified that he wakes up four or five times a night for ten to fifteen minutes at a time due to pain and estimated that he gets between four and six hours of sleep per night.  R. 82–83.

The vocational expert ("VE"), Dawn Blythe, testified that Cinelli's previous work fell into the categories of construction worker, municipal worker, bouncer and material handler and noted the exertional level for each category was between medium and very heavy.  R. 86.  The ALJ asked the VE to consider a hypothetical person who:

> can lift 20 pounds occasionally, 10 pounds frequently, the person could stand, walk and sit six hours each per day.  The person can occasionally push and pull with the left non dominant upper extremity, no ladders, ropes and scaffolds, occasional crawling, occasional reaching in all directions with the left non dominant upper extremity, occasional twitching of the left hand.

Id.  The VE testified that this hypothetical person would be unable to perform any of Cinelli's past work, id., but opined that a hypothetical person with these limitations could work as an usher, a furniture rental clerk or a counter clerk, all at the light exertional level, R. 87.  When the ALJ reduced the time that the hypothetical person could stand and walk to six hours total out of an eight-hour workday, the VE testified that this reduction would make no difference and the person would still be able to perform all three of those positions at the light exertional level.  Id.

####      4.      *Findings of the ALJ*

Following the five-step process, 20 C.F.R. § 416.920, at step one, the ALJ concluded that Cinelli had not engaged in substantial gainful activity since the alleged onset date.  R. 19.  At step two, the ALJ concluded that Cinelli had the following severe impairments:  a history of left rotator cuff repair; cervical spine degenerative disc disease; status-post artificial disc replacement; a history of left C7 radiculopathy and left cubital tunnel syndrome.  R. 19–22.  At step three, the ALJ concluded that Cinelli did not have an impairment or combination of impairments which met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  R. 22–23.  The ALJ next determined that Cinelli's RFC allowed him to perform light work as defined in 20 C.F.R. § 404.1567(b) except he can sit, stand and walk for six hours each in an eight-hour workday; occasionally push and pull with his left hand; never climb ladders, ropes or scaffolds; occasionally reach in all directions with the left upper extremity and occasionally grasp and twist with the left hand.  R. 23–27.  Cinelli disputes the ALJ's determination regarding his RFC for the alleged failure to consider consistencies across various medical opinions. At step four, the ALJ concluded that, at his RFC, Cinelli was unable to perform any past relevant work.  R. 27–28.  At step five the ALJ concluded that there are jobs in the national economy that Cinelli can perform with his age, education, work experience and RFC.  R. 28-29.  Cinelli disputes this finding given his challenge to the RFC determination.

####    C.    <u>Cinelli's Challenges to the ALJ's findings</u>

Cinelli contends that the ALJ erred by failing to (1) acknowledge the consistent limitations noted throughout the various medical opinions in determining Cinelli's RFC; (2) provide a narrative discussion for why limitations in medical opinions were not incorporated and (3) explain

why limitations from an opinion deemed "mostly persuasive" were not incorporated into the RFC. D. 9 at 12–16.

       1.    *The ALJ Adequately Considered Consistent Limitations Across Medical Opinions*

Cinelli argues that the ALJ failed to acknowledge the consistent limitations noted in the medical opinions of Dr. Kwon and Dr. McKeon.[6]  D. 9 at 13–14.  ALJs must consider several factors in determining the persuasiveness of a particular medical opinion:  (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization and (5) other factors.  20 C.F.R. § 404.1520c(c).  "The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate."  Harrison v. Saul, No. 20-10295-LTS, 2021 WL 1153028, at *5 (D. Mass. Mar. 26, 2021) (internal citation and quotation marks omitted).  The ALJ may discount a medical opinion or attribute more weight to one opinion than another.  Maclean v. Saul, No. 20-10519-NMG, 2021 WL 7451167, at *6 (D. Mass. Apr. 27, 2021).

Cinelli challenges the ALJ's consideration of the consistency factor only.  D. 9 at 12–16. When determining the persuasiveness of an opinion, consistency among opinions does not necessitate a finding that the opinions are persuasive if they are inconsistent with the rest of the record.  See, e.g., Applebee v. Berryhill, No. 17-cv-00003-NT, 2017 WL 6523138, at *9–10 (D. Me. Dec. 20, 2017), aff'd, 744 Fed. App'x 6 (1st Cir. Nov. 30, 2018); Michelle C. v. O'Malley,

---

[6] Cinelli also argues that the ALJ failed to acknowledge that, with respect to certain limitations, Dr. Kwon's and Dr. McKeon's opinions were also consistent with Dr. Gopal's opinion and Dr. Cross's opinion reviewing Dr. Gopal's opinion. D. 9 at 13–14.  The Court addresses that argument separately below.  Regardless of those similar limitations, as discussed in this section, Dr. Kwon's and Dr. McKeon's opinions are inconsistent with the rest of the record.

No. 23-cv-230-MSM, 2024 WL 2237917, at *5 (D.R.I. May 17, 2024), <u>report and recommendation</u> <u>adopted</u>, No. 23-cv-00230-MSM-PAS, 2024 WL 2834062 (D.R.I. June 4, 2024).

Dr. McKeon's, R. 669–78, and Dr. Kwon's, R. 679–88, opinions are inconsistent with the rest of the record in a number of ways.  For one example, both Dr. McKeon and Dr. Kwon concluded that Cinelli cannot lift or carry any weight, but in an earlier opinion Dr. McKeon had concluded that Cinelli could return to light work and the state-agency consultants observed that Cinelli could lift up to twenty pounds occasionally.  <u>See</u> R. 26; <u>compare</u> R. 670 <u>and</u> R. 680 <u>with</u> R. 99, <u>and</u> R. 108, <u>and</u> R. 500 <u>and</u> R. 510.  Dr. Kwon's and Dr. McKeon's limitations were also inconsistent with Cinelli's testimony that he could lift up to twenty pounds with his right arm and with providers' notations that Cinelli had a high exercise level and was completing his physical therapy exercises too aggressively.  R. 26, 72–73, 695–96, 715–16, 759–60.

Dr. McKeon's, R. 671, and Dr. Kwon's, R. 681, limitation of walking for one hour total per day is also inconsistent with notations from medical providers observing that Cinelli had a normal gait and station, walked on a track or an inclined treadmill for exercise and could complete household chores which require walking and carrying such as taking out the trash, doing laundry and carrying groceries, R. 536, 585, 628, 661, 744, 749, 840, 846, 849, 852.  The ALJ thus appropriately concluded that Dr. McKeon's and Dr. Kwon's opinions were unpersuasive because, although they were consistent with each other, they were inconsistent with the rest of the record.

### 2.    The ALJ Provided a Sufficient Narrative Discussion

Cinelli argues that the ALJ did not provide a "narrative discussion" explaining why consistent limitations across medical opinions were not incorporated into his RFC.  D. 9 at 14–15. The ALJ is required to provide a narrative discussion explaining why the evidence supports her conclusion.  Social Security Ruling ("SSR") 96-8P, 1996 WL 374184, at *7–8 (July 2, 1996).  "If

the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." Id. at 7. "The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. The narrative discussion must also explain why a source is or is not reliable. Id. The explanation must satisfactorily show that the ALJ thoroughly examined the evidence. Rosario v. Comm'r of Soc. Sec., No. 19-cv-1413-BJM, 2021 WL 1157985, at *11 (D.P.R. Mar. 26, 2021) (concluding a narrative discussion was sufficient where it included a discussion of symptoms, treatment records and opinions).

The ALJ concluded that Dr. Kwon's and Dr. McKeon's treating source statements were unpersuasive because, in part, each placed more restrictive limitations upon Cinelli than other doctors, despite the record evidence that Cinelli was able to exercise at a high level and could handle household chores. R. 26. The ALJ also concluded that the timing of each report undermined its persuasiveness: Dr. Kwon wrote his report three months after Cinelli's neck surgery and Dr. McKeon wrote his report sixteen months after he had last examined Cinelli. Id. The ALJ concluded that Dr. Wheelock's opinion was partially persuasive because, in part, the record showed that Cinelli was limited to light work, had documented left shoulder weakness and had a reduced range of motion in his left shoulder which aligned with Dr. Wheelock's conclusion that Cinelli could work at the light exertional level and occasionally push, pull and reach with the left upper extremity. R. 26–27. The ALJ concluded that Dr. Gopal's opinion was mostly persuasive because, in part, the record showed that Cinelli was limited to light work, had a reduced range of motion in his left shoulder, had neck pain radiating down the left arm and had eighty percent grip strength in his left hand which aligned with Dr. Gopal's conclusion that Cinelli could

work at the light exertional level, occasionally push, pull, grasp, twist and reach with the left upper extremity, occasionally crawl and never climb ladders, ropes or scaffolds.  Id.

Cinelli relies upon Flattery v. Comm'r of Soc. Sec., No. 20-cv-02600-RBH-MHC, 2021 WL 5181567, at *6 (D.S.C. Oct. 21, 2021), report and recommendation adopted sub nom., Flattery v. Kijakazi, No. 20-cv-02600-RBH, 2021 WL 5180236 (D.S.C. Nov. 8, 2021) to suggest that a single sentence addressing the consistency factor is an insufficient narrative discussion.  There, the court concluded that the narrative discussions regarding certain opinions were inadequate and required remand because the ALJ did not address the ways in which those opinions were consistent with other medical opinions on the record, did not provide important context for why a treating physician had not treated the plaintiff for a period of time, used the same reasoning to find one opinion persuasive and another unpersuasive, ignored consistent parts of the record only to discuss inconsistent parts of the record and incorrectly stated, without explanation, that an inconsistency existed.  Id. at *5–9.

The Flattery court, however, separately concluded that the ALJ's narrative discussions regarding other opinions deemed unpersuasive were sufficient, and were not a basis for remand, because they were supported by citations to the record, were consistent with objective evidence in the record and were consistent with treatment records.  Id. at *9–10.  For example, the ALJ stated that two treating physicians' opinions were unpersuasive because one physician did not provide details regarding what the plaintiff could do in a normal workday or workweek, the other physician's opinion was unsupported by that physician's own examinations and was formed after only a few months of treatment and both physicians' opinions were inconsistent with the objective evidence in the record and with the treatment record.  Id. at *9.

Here, the ALJ's analysis is at least akin to the analysis the <u>Flattery</u> court deemed appropriate.  R. 23–27; <u>see</u> <u>Flattery</u>, 2021 WL 5181567, at *9–10.  The ALJ analyzed Dr. Kwon's and Dr. McKeon's treating source statements, highlighting their consistent limitations, including that Cinelli could never lift or carry any weight; walk for one hour total in a day; never stoop, kneel, crouch or crawl and never push or pull bilaterally.  R. 26, 670–73, 680–83; <u>see</u> D. 12 at 10–11; <u>Flattery</u>, 2021 WL 5181567, at *9–10.  In concluding that these opinions were unpersuasive, the ALJ noted important context regarding the time the opinions were formed, provided extensive citations to the record to show that the limitations were inconsistent with the rest of the evidence, including numerous notations that Cinelli exhibited normal gait and function, had normal reflexes, was able to exercise at a high level and was performing "his home exercise program too aggressively."  R. 26 (citing R. 490, 500, 510, 536, 585, 598, 628, 631, 661, 669–678, 680, 708, 715–16, 744, 749, 760, 780, 831, 834, 840, 846, 849, 852, 856, 858).  The ALJ also observed that Dr. McKeon's opinion was far more restrictive than his prior opinions despite Cinelli's documented improvements since those earlier opinions were provided.  R. 26, 500, 669–678.

Moreover, a shorter narrative discussion may be appropriate when the discredited opinions are "glaringly at odds with other opinions in the record."  <u>Waddell v. Saul</u>, No. 20-cv-02425-MHC, 2022 WL 16716300, at *6 (D.S.C. Feb. 14, 2022).  Both Dr. Kwon and Dr. McKeon placed significant limitations upon Cinelli, which were at odds with the substantial evidence showing that Cinelli was able to lift, carry, walk and exercise.  Specifically, both Dr. Kwon and Dr. McKeon stated that Cinelli could never lift or carry any weight, while the record included several notations that Cinelli could weightlift, exercise at a high level and complete household chores requiring lifting and carrying such as taking out the trash, doing the laundry and carrying groceries.  R. 26, 490, 670, 680, 715–716, 744, 749.  An extensive narrative discussion of these opinions, was,

therefore, not needed because the "inconsistency is self-evident." Waddell, 2022 WL 16716300, at *6.

The ALJ completed a similar analysis with respect to Dr. Gopal's opinion by analyzing it in the same paragraph as Dr. Wheelock's opinion to highlight their consistent limitations and by extensively citing the record to explain why both the opinions were at least partially persuasive. R. 26–27. Both Dr. Gopal and Dr. Wheelock concluded that Cinelli could work at the light exertional level and occasionally push, pull or reach in any direction with his left upper extremity. R. 26–27, 98–101, 108–11. To show that these opinions were consistent, the ALJ cited to evidence in the record noting that Cinelli was limited to light work, his shoulder exhibited a reduced range of motion, he had left shoulder weakness and he had a history of degenerative changes in his left shoulder and neck. R. 26–27 (citing R. 327, 416, 491, 585, 696, 795, 831, 834, 898). The ALJ, therefore, provided sufficient narrative discussion to explain why she concluded each medical opinion was persuasive or unpersuasive.

3.    *The ALJ Did Not Err By Omitting Some Limitations from an Opinion Deemed "Mostly Persuasive"*

Cinelli suggests the ALJ erred by, without explanation, failing to incorporate Dr. Gopal's limitations of occasional crawling and avoiding concentrated exposure to various environmental conditions into the RFC despite finding Dr. Gopal's opinion "mostly persuasive." D. 9 at 14–16. As an initial matter, the Court notes that Cinelli's assertion that the ALJ did not incorporate Dr. Gopal's limitation of occasional crawling is incorrect. D. 9 at 15. At the hearing, the ALJ explicitly included that limitation in the hypothetical she posed to the VE. R. 86.[7]

---

[7] Even if the limitation of occasional crawling had not been incorporated into the hypotheticals considered by the VE, that omission would be a harmless error, as discussed later in this section, because crawling is explicitly noted as not required for the jobs the VE suggested.

There is no requirement for the ALJ to incorporate every limitation from an opinion if the ALJ explains why certain limitations are omitted.  Hicks v. Astrue, No. 09-cv-393-P-S, 2010 WL 2605671, at *4 (D. Me. June 23, 2010), report and recommendation adopted, No. cv-09-393-P-S, 2010 WL 2803648 (D. Me. July 15, 2010).  The ALJ's discussion, however, must explain why evidence is rejected with sufficient detail for a reviewing court to determine whether the evidence was rejected for the right reasons.  Leggett v. Berryhill, No. 16-cv-11027-JGD, 2018 WL 700786, at *7 (D. Mass. Feb. 2, 2018); Watkins v. Berryhill, No. 16-cv-30117-KAR, 2017 WL 4365158, at *10 (D. Mass. Sept. 29, 2017); Dumont v. Berryhill, No. 16-cv-11502-JGD, 2017 WL 6559758, at *8 (D. Mass. Dec. 22, 2017).  The ALJ did omit without explanation the limitations recommending that Cinelli avoid concentrated exposure to extreme cold, extreme heat, humidity, vibration, atmospheric conditions, moving mechanical parts and other hazards from Cinelli's RFC. R. 23, 26–27, 86–89.

It is not a reversible error, however, to omit limitations when the jobs recommended by the VE and relied upon by the ALJ do not involve any conditions related to the omitted limitations. See, e.g., Lynch v. Berryhill, 368 F. Supp. 3d 292, 297 (D. Mass. 2019); Hoag v. Saul, 531 F. Supp. 3d 462, 466 (D. Mass. 2021). Even if these limitations should have been incorporated, none of the jobs suggested by the VE require any exposure to extreme cold, extreme heat, humidity, vibration, atmospheric conditions, moving mechanical parts and other hazards.  R. 87; DOT 344.677-014 (usher), 1991 WL 672865; DOT 295.357-018 (furniture-rental consultant),

---

R. 87;  DOT 344.677-014 (usher),  1991  WL  672865;  DOT  295.357-018  (furniture-rental consultant), 1991 WL 672589; DOT 249.366-010 (counter clerk), 1991 WL 672323.

1991 WL 672589; DOT 249.366-010 (counter clerk), 1991 WL 672323.  Therefore, their omission

amounts to harmless error and does not require remand.[8]

## V.    Conclusion

Based on the foregoing, the Commissioner's motion to affirm the ALJ's decision, D. 11,

is ALLOWED and Cinelli's motion for summary judgment, D. 8, is DENIED.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[8] Cinelli likens his case to <u>Watkins</u>, 2017 WL 4365158, at *9–10 and <u>Leggett</u>, 2018 WL 700786, at *6–7, where ALJs' failures to incorporate certain limitations required remand.  D. 9 at 15.  But the limitations omitted without explanation in those two cases may have impacted the jobs the ALJs determined the claimants could perform.  In <u>Watkins</u>, 2017 WL 4365158, at *10, the ALJ concluded the claimant was capable of working as a laundry classifier or price marker but omitted limitations regarding the claimant's ability to maintain concentration, persistence and pace without explanation.  Because the omitted limitations are not mentioned in the Dictionary of Occupational Titles for the jobs of laundry classifier and price maker, <u>see</u> DOT 361.687-014 (classifier), 1991 WL 672991; DOT 209.587-034 (marker), 1991 WL 671802, it was not clear whether those limitations would affect the claimant's ability to perform the suggested jobs.  Similarly, in <u>Leggett</u>, 2018 WL 700786, at *6–7, *9, the ALJ, without explanation, omitted a limitation which could have impacted the claimant's ability to perform the suggested jobs.  By contrast, here, the omitted limitations are noted to have no effect upon an individual's ability to perform the suggested jobs.  R. 87; DOT 344.677-014 (usher), 1991 WL 672865; DOT 295.357-018 (furniture-rental consultant), 1991 WL 672589; DOT 249.366-010 (counter clerk), 1991 WL 672323.